In the Matter of the Adoption of JENNIFER SASAKI by JOSEPH T. GUMATAOTAO and BELLE H. GUMATAOTAO, husband and wife

Adoption No. 153-74

In the Matter of the Adoption of JENNIFER DENISE SASAKI, by CLIFFORD JAMES BARDA and NANCY McCREADIE BARDA

Adoption No. 29-74

Superior Court of Guam

May 2, 1975

WEEKS, *Judge*

### MEMORANDUM DECISION

The fact situation, inasmuch as it is necessary to relate with regard to the order, is as follows:

A delinquent girl, then a ward of the Court, gave birth to

270

a daughter on September 16, 1972. She did not consent, as she had indicated prior to birth, to the child's availability for adoption and the child was placed in a foster home under the custody of Social Services. Later the infant was returned to the Juvenile Justice premises where the mother was confined, in hopes of inspiring motherly affection and care.

On March 8, 1974, while the child was at Juvenile Justice, Mr. and Mrs. Barda, with counsel, appeared before Judge Perez and attested to all matters necessary to show qualification as adoptive parents. They then left the Island and returned to the mainland.

On March 11, 1974, the child was put in the foster home of Mr. and Mrs. Gumataotao where she has remained until this date.

On July 29, 1974, the Attorney General, upon recommendation of Public Health and Social Services and Probation workers, filed a petition for Termination of Parental Rights versus the mother. After numerous continuances caused by the failure of the mother to appear after one notice, the hearing was held without the mother present. The petition was granted on October 22, 1974. Social Services informed the Gumataotaos the child was now adoptable and they filed their petition on October 31, 1974.

The Court has heard the testimony of the parties herein except for Mrs. Barda, and has satisfied itself that both couples are fully qualified, indeed outstandingly so, as adoptive parents.

The testimony has further shown that no rights vested in the Bardas prior to this time because of the appearance before Judge Perez on March 8, 1974. Thus, each petition is to be considered without regard to date of filing.

The issue to be resolved then, is which of the family

situations will best enhance the life of Baby Jennifer, which is in the child's best interest.

The negative factors in the child's staying with the Gumataotaos which the Court has weighed, are the age of the petitioners and the fact that although parental rights are terminated, the child's natural mother knows where the child is placed and is of an unstable nature.

This means, as pointed out by counsel, Mr. Gumataotao will be seventy (70) when Jennifer is seventeen (17) and Mrs. Gumataotao will be sixty-eight (68), as opposed to the projected ages of fifty-nine (59) and fifty-one (51) for the Bardas.

It also means that it is conceivable that Jennifer's natural mother could be a disruptive influence in the child's life, something quite unlikely if the child were on the mainland with the Bardas.

The age factor does not disturb this Court inasmuch as the Gumataotaos appear vigorous active persons. In any event, the raising of young children into responsible adulthood by grandparents is common enough to the culture of this Island as not to indicate that even so pronounced an age difference will mar Jennifer's development. The possibility of Mr. Gumataotao's death before her adulthood is real, but Mrs. Gumataotao is several years younger and their economic condition is sound.

On the second matter of interference with the child by the natural mother, this Court, after advising counsel of its intention to investigate the records of the natural mother and baby at Juvenile Justice, and obtaining their consent, has satisfied itself that, although the natural mother would be an undesirable influence in the child's life, she has not, for a period of about a year, come by the Gumataotaos' premises; this includes a period prior to the termination hearing which has taken away her legal rights to the child.

There is no reason to assume that she will begin to do so now upon adoption.

The negative factor which the Court considered in the case of placement with the Bardas is the fact that after fourteen (14) continuous months of care and unquestioned development in the Gumataotaos' home, the child will be faced with relocation to a new home, with new "parents" and a totally different atmosphere on the mainland.

Practically speaking, this means there will be no opportunity for adjustment by steps into the new environment, with weekend visits and gradual assimilation into the new "family" unit from the old. It means instead, farewells, a plane trip (with a loving person but one who is still a stranger) and total removal from the atmosphere which has brought Jennifer from a condition of suspected retardation to the alert youngster this Court has seen.

The Court is not willing to risk the effects of such a move on so delicate a nature as hers and thus will grant the adoption petition of the Gumataotaos and deny that of the Bardas.

Counsel for the Gumataotaos will prepare the order.